Case number 14-3723, United States of America v. Angelique Bankston. Oral argument not to exceed 15 minutes per side. Nadia Wood for the appellant. You may proceed. Good morning. My name is Nadia Wood, and I represent the appellant Angelique Bankston, and I would like to reserve three minutes for rebuttal, please. Thank you. The most important question before you today is whether the trial that Ms. Bankston received was fair. She was tried for something that is not a crime, communicating with a court. That charge infected the entire trial. It opened the door to all kinds of evidence that is not relevant to other counts. It opened the door to her prior convictions. It sat there like a hundred-pound gorilla in the room, and it weighed heavily on the jury as to whether Ms. Bankston's guilt or innocence on the other counts was decided on the evidence related to the other counts, or on this propensity evidence that was introduced because of count 23. Most importantly, the judge who presided over the whole proceeding was both a witness to this alleged crime and listed as a victim in the PSR. He was not an impartial magistrate, and he should have recused himself once he realized that he was entangled with this case. How would that standard work out practically? Is it your position that any time a defendant decides to write a letter to a judge, then that judge, upon receipt, should, and let's assume some sort of charge related to that, then that judge has to recuse him or herself? Well, Your Honor, that's the reason why Congress exempted that kind of letter writing from being a crime, so we wouldn't run into these situations. But once the government charged it and the defense failed to move to dismiss as frivolous a superseding indictment on that count, then the judge became the witness and the victim. And that's the issue here. Counsel, didn't the judge try on quite a few occasions to persuade the government to drop this charge? I mean, he was not somehow invested because you say he was a victim or a witness in having this matter adjudicated. He was pretty clear with the government that he thought the trial would work much better if this charge was not even part of the proceedings. Isn't that so? That is absolutely so, Your Honor, and that is another reason why he was not an impartial magistrate. He did not think that this is how the government should be proceeding, and he told them so on numerous occasions in his order on the motion for severance and the pretrial hearing during the trial. And he's expressing his opinion on the charge, which also doesn't make him impartial. But most importantly, it's not the actual bias or whether he was actually impartial, but it's the appearance of impartiality. And in this case, we have an objective person with the knowledge of the facts who reviewed everything in the case and found the judge to be not impartial, and that person is the probation officer who wrote up the pre-sentence investigation report. He reviewed the indictment, the charge, and the probation office listed the judge as a victim. It is not, in my opinion, the opinion of the probation officer who is reviewing everything related to the case. Counsel, going back to the letter, the judge, upon receipt of the letter, deemed the letter a motion, filed it, and treated it that way. And every judge administering a case has to be able to review documents. So the probation officer making a statement, that doesn't transform that into putting the judge in a position that would cause him to lack partiality, does it? That seems like an absurd result. Well, the judge receiving the letter and treating it as a motion, there's no problem there, Your Honor. The judges receive per se motions and writings and letters all the time. That's routine. Absolutely. The problem becomes when the government charges a defendant based on that letter, even though it is exempt by statute. So once it goes to trial and the judge presides over the trial and sentences the defendant based on a crime of writing the letter to the same judge, that's when we run into a problem. This charge should never have been brought by the government. And the statute is very clear that this conduct is exempt. But that objection was not made? That was not made. And that's another reason why Ms. Bankston's trial was not fair. A lot of the errors were made along the way, and her defense counsel didn't object, didn't file a motion to dismiss that charge. And putting your client on trial for something that is not a crime, that is ineffective assistance. Counsel, this was one charge of what, approximately 23 charges? Is that correct? There were 22 other counts. Okay. And how long was this trial? I believe it took about a week over perhaps a longer period of time because of the holidays. Were you trial counsel? No. You were not. How much time would you say in the totality of the trial was spent on this particular charge? Several days. Just devoted to this one charge? Yes. In particular, this charge caused the defendant to testify. She said repeatedly, several times, this is the only reason I'm testifying. I want to limit my testimony only to count 23. But then, once she testified, the government had her on a stand and conducted extensive cross-examination that lasted for at least half a day and into the next day. And then they introduced six witnesses, specifically related to count 23, plus rebuttal witnesses, to just talk about count 23, even though that was... But once the defendant opted to take the stand, even though in the trial, she can't control under the federal rules then. She can't really restrict that to the parameters that she wants. I mean, there were other procedural ways to handle that which were not done. So how can she then use that as a prejudicial aspect for the trial? Well, that all stems from the charge. She would not have been up there in the first place if it were not for the count 23. And further, she was per se without making a knowing and voluntary waiver of counsel in the first place. So this trial was compromised from start to finish. Could you turn back to an explanation of why you think the grant of her request to represent herself was not knowing and voluntary? What are your best arguments for why it fails that test? The judge didn't ask all the questions. He didn't make the finding that it was knowing and voluntary, which is required by this court. Doesn't our law say that you have to ask these 13 questions? The law says in our circuit, and I think probably throughout circuits, that there needs to be a substantial similarity in what the judge asks, that they're not magic words that must be uttered, but the information and the relevant considerations must be accounted for in the judge's action. Tell me why you don't think that the questions asked substantially complied with the requirements. Because of everything that the judge admitted, the maximum penalties, the sentencing guidelines, particularly. The maximum penalties were submitted the next day before any evidence was introduced in the trial, weren't they? Yes, they were, but the trial starts on day one with the jury selection. She went through the entire jury selection, per se, before those maximum penalties were introduced. And moreover, once the prosecutor put on the record the maximum penalties, the judge never went back and advised or asked Ms. Bengston, now knowing this information, do you still want to proceed? On page ID 2969, what the judge says to the prosecutor is, thank you for placing this on a record. And then he asks Ms. Bengston a question, does she have any questions about maximum penalties? He never actually asks her, now knowing this information, do you still want to proceed without counsel? He certainly, the judge, yes, the judge did not follow perhaps a desirable script, but the judge seemed to drive home to her his deep misgivings about her representing herself. He made clear to her he thought that was a terrible idea. He did ask questions that allowed him to get a sense of her understanding of the law. So those are all important inquiries, and it would seem that perhaps in a less than ideal way, he did establish enough to conclude that she knew what she was doing and she voluntarily waived the right to counsel. Your Honor, the knowing involuntary waiver comes from knowing the risks. Without being advised that she could get consecutive sentences, staggered ID count sentences that come one after another, without knowing what the penalties are or other information. But didn't he ask her that question? And she said, I understand all the charges against me, let me list them, and she lists the charges against her. And she omitted several. She omitted the conspiracy counts, she omitted count 23. There were several charges that she omitted during her explanation, and that should have alerted the judge that perhaps she does not have an understanding of what are the charges against her. And to go back to your question, Judge Lopez, what she has to know is not just understand the law, she has to understand the consequences. And it's failure to advise of the potential consequences of going pro se that's at issue here. So is it your position that when the next day the consequences, her sentencing exposure was made clear to her, the judge should have gone back through a complete inquiry to see whether in light of her understanding now of the consequences, she still wishes to proceed representing herself? Is that your position? Yes. Yes, Your Honor. And the judge should have made a finding that the waiver was knowing involuntary on the record. That finding was never made by the judge. Well, the judge doesn't actually have to use those specific words. I mean, he does say things that indicate that is his conclusion, even though he does not. Are you saying he has to actually use those very words? Well, the Sixth Circuit in Herrera-Martinez's case reversed because the judge did not make that finding. This court said the judge in that case do any of the questions. He did a four, about the same as here. He asked some questions, but not all the questions, and he did not make the finding, just like this case. Well, I'm looking, I'm thinking of, you know, following McBride, we had Utrera, Miller, Williams, and they all seem to me to say that the key here is relevant considerations. Does, did the defendant receive and was there an analysis of the relevant considerations? And then our case law lists those as familiarity with the law. And, you know, you ask her about law school. He asked her about courses, then gravity of the charges. He did speak to her about that these are dangerous charges. Do you even know what they are? And then the dangers of self-representation, and I think the colloquy on that is clear. He told her, you know, a person who represents himself has a fool for a client. So tell me what, is there one category of relevant considerations that you think was missed entirely? The penalties and the consequences, and, Your Honor, you brought up Williams' case that the government cited. There was a pro se appeal where the defendant alleged that the judge only focused on the knowledge of the case, but I went back and looked at the Williams pretrial hearing transcript when Williams waived his counsel, and the judge asked, is your decision completely knowing and voluntary? A hundred percent, sir. And then the judge made a finding. I think you have knowingly and voluntarily waived your right to counsel. So in Williams' case, there was actually a question asked and a finding made, unlike here. Here we have not sufficient advisement of the actual consequences, not that you would be really foolish to do this, but why it would be really foolish to go without counsel. And not a finding that is knowing and voluntary. That finding was never made. And I see that I'm out of time, Your Honor, so. Judge Donnell, do you have any further questions? I do not. I shall pass. Thank you. May it please the Court. My name is Mark Bennett. I am here on behalf of the aptly of the United States of America. Your Honors, the conviction of Ms. Bankston in the district court's denial over pretrial motions should be affirmed for three particular reasons. Initially, the district court did conduct a sufficient inquiry into whether or not Ms. Bankston knowingly and voluntarily waived her right to counsel. As Your Honors have noted in questioning of the appellant, there's no need to the magic words by Judge Dowd to have said knowingly and voluntarily. What about the fact that he did not tell her what the maximum penalties could be, which is a pretty big consideration when you're deciding whether you want to represent yourself. And it was only done at the behest of the government, and it was done after trial began. Yes, Your Honor. As you noted, it was done prior to any acceptance of testimony. And I think that there's some importance there. But on the other hand, the decision to represent yourself should be made when the trial begins. And once she's already made that decision without a key component, what good does it do to come back at the end of the first day and say, oh, by the way, here's what penalties you can receive, unless you then say in light of those penalties, are you still willing to represent yourself? Your Honor, Judge Dowd and the district court did make all of the necessary, and we take the record of the whole, all of the necessary inquiries as far as the penalties, substantial penalties that were there. They were not asked until after Vordeer. However, this trial, or the case itself, had been an extensive period of time. As the record indicates, there was a third superseding indictment. There were three counsel that Ms. Bankston had retained. Judge Dowd had an extensive interaction with Ms. Bankston, where guideline calculations and statutory maximums had been addressed. Are you talking about the end of the first day of trial, or are you talking about pre-trial? The totality of the time that a year and a half prior to trial that Judge Dowd had an opportunity to interact. But she didn't ask to represent herself until the first day of trial. Well, that's true, Your Honor. But at the end of the day, the ultimate determination is whether it was knowingly, voluntary, and intelligent by Ms. Bankston to waive her right to counsel. Counsel, at the most basic level, how could we conclude on this record that she made a knowing decision to waive the right to counsel when, as Judge Stransch has pointed out, her sentencing exposure was not explained to her until the second day, and the judge doesn't say anything after she's given that information to confirm his earlier finding that her waiver was knowingly involuntary? Does he say anything that would permit that inference, that he actually confirmed that earlier finding? In the record, I do not believe he specifically inquires of her if she would wish to continue to represent herself at that point. However, there is a pause and an inference to her. You're aware of these. She admits that she's aware of this. She had gone through the previous inquiry with His Honor the day before. As Judge Stransch had mentioned, he did comply with or substantially comply with the overriding concerns that the court has, a familiarity with the law that charges her knowledge of those aspects, whether she had, in fact, ever gone to law school or had done any college courses involving the law. In addition, I think it's important to note to the court that even though at some point, once she decides she wants to represent herself and Her Honor allows her to do that, she has an active co-counsel in Jackie Johnson, who's the first assistant federal public defender. She is there throughout the voir dire process. If you look at the record that's there, she is active, page ID 2931 through 2947, throughout the entire process there and assisting Ms. Bankston. Any concern at that point that a portion of the trial had begun before the statutory penalties were discussed, she has active counsel with her throughout that entire process. In addition- I understood that he said you've got to sit behind the rail and she must have ended up sitting at the table. When Ms. Bankston was testifying and the judge found that she opened the door to the rest of her criminal history, was the counsel asking her those questions? As far as when she was testifying on her own behalf, Your Honor? Yes, yes. No, but there was, through the middle of her testimony, there were an instance in the record where Ms. Johnson did step in and ask for an opportunity to talk to Ms. Bankston, as well as the entire page ID 4387 through 884463, a discussion of whether she will or will not testify. And that was all done outside of the purview of the counsel for the United States. So she was actively involved, and to the extent, Your Honor, has mentioned that she was initially told to stay behind counsel table. The record shows that page 3585 to 86, specifically at the behest of the government, the record is made that she was there sitting at table. She admits that she was not only helping with exhibits, but assisting with cross-examination of witnesses, discussions of her own, direct examination of her particular witnesses. In addition, the two main agents in the case, the postal inspector at page 3307 and the IRS special agent who was the primary agent on the case at 4086, Ms. Johnson interrupts the testimony that's going on, steps up, and interacts with Ms. Bankston. So she sat at table the entire time from the voir dire up through the end of trial. She assisted Ms. Bankston with all aspects of the trial, with her own direct examination, her cross-examination, and she was there specifically the entire time of the voir dire process and involved in the objections and preemptive challenges with regard to certain jurors. Could we turn to count 23? Yes, Your Honor. I would like to hear your argument on that. Yes, Your Honor. The appellant argues that somehow the fact that count three included a reference to the judicial branch undermined the entire trial. No, I think the argument is that count 23 undermined the trial because it was an invalid count. Your Honor, the count 23 dealt with both the executive and the judicial branch. It was a false statement that Ms. Bankston sent to Judge Dowd, who was not a victim, was not a witness. Well, it may have had implications for the executive branch in the way that you described. It may have had effects on the judicial branch, but what is there in the language of the exemption that would allow the government to conclude that those effects justified going forward with this charge? There's nothing in the language that would support that broader application of the exemption, is there? No, Your Honor. The aspect of count 23 that allowed it to go forward and was charged in the third superseding indictment as a false statement that caused the FBI and the IRS agents assigned to the case to perform additional investigatory aspects and connections with the allegations. Federal Rule of Criminal Procedure 7C1 allows a single count to charge both aspects of a statute. In that argument, if you're hanging your hat on the executive resources argument, wouldn't that apply to any criminal action where false statements are alleged? Well, Your Honor, this was a very specific false statement that Ms. Bankston alleged. Well, there are a whole lot of very specific false statements that go on in criminal trials. Yes, Your Honor. I'm asking you if you think you can use this count 23 as a shotgun. Well, Your Honor, we weren't using it as a shotgun. It was an allegation by Ms. Bankston that a postal inspector had broken into her home, planted evidence, then went and got a search warrant, recovered that evidence, and that the entire aspect of the case was based upon those actions. And she wrote that to the judge and 1001B says an exception to this crime is if you are engaging in providing that information pursuant to a judicial proceeding. Yes, Your Honor. Correct? But the charge was also to the executive branch and all the aspects that needed to come after that fact. I mean, this is a very serious claim against a federal agent that would require, as the government would be in any instance. If, in fact, a postal inspector broke into a defendant's home or a target's home, planted evidence, then went and got a search warrant to obtain that evidence and then bring charges, the federal government... I understand that you, others involved in this case, were deeply offended by the nature of the charge and troubled by the implications in terms of all the additional resources that had to be used, but that doesn't justify ignoring the clear language of the statute as a way of registering your annoyance with what she had done. That seems to be, frankly, that seems to be what was motivating the insistence that this charge go forward despite the urgence of the judge that the government drop the charge. Your Honor, two points to that. First, it wasn't that it was an annoyance. That's a federal offense. It's a crime. If the federal agencies are aware of an allegation, whether to the court or to the United States Attorney's Office or to the FBI that a crime has occurred, there's an obligation to research that and investigate that and determine that fact, which the IRS and the FBI and the Postal Service were required to expend extensive amounts of resources to find that information to be truthful or false. If a criminal defendant says the gun that the officer says he found on me was planted by that officer, then don't you expend a lot of resources on those? And isn't that a claim that we see with some regularity? Your Honor, I would disagree that there would be extensive resources in that regard. I guess what I'm struggling with, Counselor, is what does 1001B mean and why is it there? It seems to me that it means that you can make perhaps incorrect, perhaps stupid claims to a judge in the course of being prosecuted or litigation, and that's exempt from charging under Count 23. It seems to me that that's the purpose of it, and that's a not unreasonable purpose, and I'm not hearing anything from you that tells me why that exemption doesn't apply. Your Honor, because I don't disagree with you on behalf of the government, it doesn't disagree with the judicial aspect of that count. However, if the count had simply said the executive branch, I don't think that there would be as big of a concern that's here simply that it was made to a judge through the course of the proceedings. It was the executive branch that was forced to expend all of the resources as well as looking at the postal inspector potentially facing discipline or criminal charges that took the seriousness and something that shouldn't be allowed to occur. A defendant shouldn't be able to make a false statement accusing making such an accusation. The other aspect I don't want to lose track of discussing is, irrespective of whether or not the government had pursued Count 23, and the record shows that the government had requested to sever that for fear that the issues that were going to be raised about whether it occurred or not may have been kind of a trial within a trial. However, the defense argued against that and instead said, no, we don't want severance, and that was because Ms. Bankston wanted to make this argument. She made this argument throughout the trial. It wasn't in defense to only Count 23. It was in Ms. Bankston's opening statement. It was throughout her questioning of the agents. It was through her direct testimony. Her defense was that this had occurred, so to suggest simply because Count 23 was in existence and there as part of the third superseding indictment. That's not the suggestion. The suggestion is because Count 23 was in there, she took the stand, and because she took the stand, then the door was opened and you could get into evidence, I think, seven prior convictions. I think my question on that is how could that not have impacted the entire trial from a due process standpoint to place her in the position that to defend that, she opens the door and now the jury hears not just what they might have thought was a very odd defense or a problematic defense. They hear that this is seven convicted defendant, been here before, done this kind of stuff before. How could that not impact the fairness of the trial? I see that my time is up. Please answer. Thank you, Your Honor. Because Ms. Bankston had made it clear throughout the motion to suppress coming up and leading into trial and then at her request to represent herself that that was her defense. It wasn't just defense to Count 23. As Judge Lopez had mentioned, it was only one of 23 counts. Counts 1 through 22 all related to and stemmed in large part from the search of Ms. Bankston's property and the location of the evidence that was used to establish the five different schemes that she was involved in in her financial fraud, evidence of aggravated identity theft. I guess, and I understand that that would be her defense, but that might not have necessitated that she take the stand. She said she had neighbors who saw it. So why couldn't she have relied on that defense through testimony from other individuals and not herself have taken the stand and opened the door to her prior convictions? Once she decided to represent herself, it was clear through her opening statement and throughout the trial and into her closing arguments that this was going to be her defense, and she alone was able to make the ultimate argument. I mean, it's her choice. As the record reflects, several times she discussed with Judge Dowd, with her co-counsel Jackie Johnson, whether she was going to take the stand or not and ultimately made the decision she was going to take the stand. Instead, it's because I want to respond to Count 23, correct? It was her comment that was there, but it was also her defense. Are you arguing, counsel, that it's a fair inference that even in the absence of Count 23 she would have taken the stand to further the defense that she wanted to proper? Yes, Your Honor. What do you base that on? Again, her clear representation throughout the trial that the postal inspector had broken into her house, had taken and or planted evidence, and then went and got the search warrant. And a good part of her testimony related to things only she knew at the time of the search. There's references to whether or not she had a dog because there was dog food in the garage that belonged to one of her friends that only the person that broke in the house would know. The fact that the card was provided. The only way to get that in because her neighbor said there was no card that he had any longer, never knew the name of the person. So it's Ms. Bankston's own testimony that she tried to close the loop of specifics that occurred at the time of the search that only she would have had knowledge of and the ability to make those inferences. Her neighbors did not make those claims. All the neighbors said was two law officers came to your house and opened your garage. And there was testimony from the Lakewood police officers that the garage was already ajar. They opened it enough to get underneath it, knock on the door, and leave a card. The whole aspect of what was planted and or taken was all on Ms. Bankston. So she was going to testify and get that information out because that was her entire theory. Judge Donald, do you have further questions? I do not. Thank you for your argument. Your Honor, we wouldn't have to speculate today whether she would or would not have taken the stand if count 23 was not part of the charge. And it wouldn't have been if the government didn't charge her with it. We've been focusing on a Part B, the exception, but I want to draw your attention to Part A of that statute. The Part A begins, except as otherwise provided in this section. It clearly references the Part B. And the normal rule of construction, whether statute or contract, is that the words incorporated or referenced in one part of the statute are treated the same as if they were part of that section. So the Part B is part of A. If you read the two together, the indictment in the first place should have negated this assumption, and it couldn't, and it didn't. What's the relevance of it? The government points out that they recognize there were some problems going forward with count 23. They ask that that charge be severed, and the defendant herself opposed that. Should that be taken into consideration in terms of your overarching due process claim? Well, part of the due process claim here is an effective assist of counsel. Her counsel, Ms. Bankston's counsel, was concerned that Ms. Bankston was incarcerated for a long time.  She was in prison. Separating the trials would have caused further delay, and moreover, this was Judge Dowd's last trial. Separating the trials would have caused the case to be reassigned on another judge's calendar. In the meantime, she'd remain incarcerated. What should have been done is that the defense counsel should have moved to dismiss count 23 entirely instead of merely opposing severance. And going back to Mr. Bennett's point, that there were four indictments in this case, which is especially important why the judge should have went through all the counts and the penalties for each count because the indictments ranged anywhere from, I believe, 22 to 86 counts at one point, and they were in the third superseding indictment for which she was indicted just mere weeks before trial. There wasn't that long of a time span between the third superseding indictment and when they actually went to trial. So it's especially important when you have multiple indictments to go through each count and the penalties for each count in this case. And whatever the allegations were, the judge dealt with them in the motion to suppress. The judge did the right thing, treated this motion to suppress, denied it, and both parties could have moved on. But they didn't, and here we are with a charge 23 that infected the entire trial. Therefore, what we're asking here today is for this case to remand this for a new trial without count 23. And in the alternative is that she needs a new resentencing, so the proper loss amounts can be determined and the PSAR can be corrected in the category history. Thank you both for your arguments. You may adjourn.